OPINION
{¶ 1} Appellant, Angela Thomas ("Angela"), appeals the judgment of the Lake County Common Pleas Court, Juvenile Division, which granted permanent custody of her son, Jonathon King ("Jonathon"), to the Lake County Department of Job and Family Services ("the Department"). We affirm.
 {¶ 2} Jonathon was born July 6, 2001. Angela was incarcerated in the Lake County Jail at the time of the birth. On July 13, 2001, the Department filed a motion for emergency temporary custody of Jonathon. The motion contended that Jonathon was a dependent child who was being released from Lake County Hospital on that day, and that no parent or relative was able to care for Jonathon.[1] The trial court granted the motion and awarded temporary custody to the Department.
 {¶ 3} On August 9, 2001, the Department filed a case plan that required Angela to complete a drug and alcohol assessment and follow all recommendations for treatment; secure and maintain a safe and stable home environment; obtain employment; attend age appropriate parenting classes; complete a psychological evaluation; and that Jonathon's basic needs be met while in foster care. On August 9, 2001, the trial court adjudicated Jonathon a dependent child.
 {¶ 4} On January 15, 2002, the Department filed a motion for permanent custody. The permanent custody hearing was to begin on March 29, 2002, but was continued at the request of Jonathon King, Sr., and Angela.
 {¶ 5} On April 11, 2002, Christopher Thomas moved to be released from the proceedings contending that he was not the child's father, had no interest in the child, and agreed to permanent custody. No objections were filed and the trial court granted the motion.
 {¶ 6} The permanent custody hearing began on June 28, 2002; however, the trial court judge then realized that he was acquainted with Angela's family and recused himself from the case.
 {¶ 7} The trial court began taking evidence in the permanent custody hearing on November 25, 2002, but the hearing was not completed at that time.
 {¶ 8} In late November 2002, genetic testing was conducted on Jonathon King, Sr., and he was found to be Jonathon's father. Jonathon King, Sr., was then added to the case plan.
 {¶ 9} The trial court concluded the permanent custody hearing on April 30, 2003.[2] On May 27, 2003, the trial court put on a judgment entry granting the Department permanent custody of Jonathon. In its opinion filed May 27, 2003, the trial court found that Jonathon was an abandoned child as his parents had had no contact with him since his birth and that Jonathon had been in the temporary custody of the Department since he was a week old. The trial court found that the Department had made reasonable efforts to reunify the family. The trial court also found that it was in Jonathon's best interest to grant the Department's motion for permanent custody.
 {¶ 10} On June 24, 2003, the trial court sua sponte amended its May 27, 2003, judgment entry to reflect the analysis of the factors set forth in R.C. 2151.414. The trial court found that:
 {¶ 11} "* * * the child [had] been in the custody of the Department since he was ten days old and ha[d] not developed any significant relationship with his mother. He ha[d] never seen his father. He ha[d] a close relationship with his foster parents and his little sister who [was] also in the foster home.
 {¶ 12} "* * * the child [was] too young to express a valid wish.
 {¶ 13} "* * * the child [had] been in the temporary custody of the Department for more than twelve months of the last twenty-two consecutive months.
 {¶ 14} "* * * Jonathon, at his very young age, [had] a critical need for a legally secure permanent placement and that such placement [could] not be obtained without a grant of permanent custody to the Department, and that to delay such custody would be contrary to the intent of the law * * *. This matter [had] been delayed for a considerable time and no further benefit [could] be obtained by additional postponement.
 {¶ 15} "* * * the mother is unable to provide an adequate permanent home for Jonathon mainly due to her chemical dependency.
 {¶ 16} "* * * the father, who [had] just been released from prison and [had] never seen the boy, [was] unable to provide basic necessities and an adequate permanent home for the child."
 {¶ 17} The trial court also found that:
 {¶ 18} "the Department made reasonable case planning and diligent efforts to return the child to the mother, but that the mother [had] failed to avail herself, to any significant degree, of necessary services and full visitation opportunities.
 {¶ 19} "* * * the mother [had] not provided an adequate home for the child in the past and [was] incapable of doing so for the foreseeable future due to her drug addiction. She [had] failed continuously and repeatedly to remedy her chemical dependency even though she made some futile attempts. The mother also [had] a history of incarcerations that promise[d] to continue."
 {¶ 20} Angela appeals from the trial court's judgment raising one assignment of error: "The trial court erred in granting the motion for permanent custody as the court's findings are not supported by clear and convincing evidence."
 {¶ 21} R.C. 2151.414(B)(1) sets forth the applicable standard for determining the motion for permanent custody in the instant case. This section provides:
 {¶ 22} "* * * the court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 23} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 24} "(b) The child is abandoned.
 {¶ 25} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 26} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C.2151.414(B)(1)(a)-(d).
 {¶ 27} To determine the child's best interest, the trial court must consider all relevant factors, including but not limited to:
 {¶ 28} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 29} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 30} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 31} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11)[3] of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
 {¶ 33} R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when determining a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is presented before proceeding to a determination regarding the best interest of the child. Inre Funk, 11th Dist. Nos. 2002-P-0035 and 2002-P-0036, 2002-Ohio-4958, ¶ 36.
 {¶ 34} Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. (Internal quotations and citations omitted). Id. at ¶ 39.
 {¶ 35} In the instant case, the record establishes that Jonathon was born to Angela while Angela was incarcerated in the Lake County Jail on a probation violation. The Department took custody of Jonathon on July 13, 2001, and retained custody through the hearing, thus satisfying the requirements of R.C.2151.414(B)(1)(d).
 {¶ 36} Further, Angela had no contact with Jonathon after July 13, 2001, in spite of the fact that she was afforded visitation rights.[4] It is true that Angela was unable to exercise her visitation rights because she was in jail except for one occasion. On that occasion, she failed to visit. It is apparent that Angela was simply unable to stay out of jail long enough to establish a relationship with Jonathon. Jonathon King, Sr., had no contact with the child. Therefore, there was clear and convincing evidence that Jonathon's parents had abandoned him.
 {¶ 37} Turning to the best interest of the child analysis, the court had before it evidence that Jonathon had a strong bond with his foster family and his sister who was also in the same foster home. Jonathon had no bond with his natural parents or relatives. R.C. 2151.414(D)(1).
 {¶ 38} Jonathon was less than two years old at the conclusion of the hearing, and therefore, incapable of directly expressing his wishes. However, the guardian ad litem testified that it was in Jonathon's best interest that the court grant the motion for permanent custody. The guardian ad litem also submitted a report detailing the reasons it was in Jonathon's best interest to grant the motion. These reasons included Jonathon's custodial history and the inability of the parents to provide a permanent, secure home environment. R.C. 2151.414(D)(2).
 {¶ 39} Jonathon was in the Department's custody from July 13, 2001 through the conclusion of the hearing on April 30, 2003. Thus, he was in the temporary custody of a public children services agency "for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999[.]" R.C. 2151.414(D)(3).
 {¶ 40} In conclusion, Jonathon had been in the temporary custody of the Department since he was two weeks old. Angela was unwilling or unable to overcome her drug addiction and, consequently, was unable to stay out of jail for any length of time. Neither Angela nor Jonathon's father had had any contact with him. Neither Angela nor the father made any significant attempt to comply with the case plan and work toward reunification. The evidence clearly established that there was little or no hope that Jonathon could be reunited with his natural parents; thus, the only means of achieving a legally secure permanent placement was a grant of permanent custody to the Department. R.C. 2151.414(D)(4).
 {¶ 41} As discussed above, there was also clear and convincing evidence to establish that the parents had abandoned Jonathon. R.C. 2151.414(D)(5); R.C. 2151.414(E)(10).
 {¶ 42} Angela argues that the Department did not use reasonable case planning and diligent efforts to reunify her with Jonathon and did not adequately pursue the possibility of placing Jonathon with his paternal aunt, Tracey. We disagree.
 {¶ 43} The Department developed a case plan that was filed with the trial court on August 9, 2001. This case plan set forth issues that Angela needed to address so that she could adequately parent Jonathon, i.e., establishing suitable housing and obtaining employment, dealing with her drug addiction, and taking parenting classes. This case plan was reviewed and amended as necessary throughout the proceedings.
 {¶ 44} Angela failed to comply with the case plan. While she did obtain a drug and alcohol assessment and began treatment, she failed to complete her treatment program. The state presented substantial evidence that Angela continued to abuse crack cocaine and that she was repeatedly incarcerated. Angela never obtained suitable housing and in fact refused to disclose to the court where she was living at the time of the hearing on November 25, 2002. Angela failed to maintain employment and she did not attend parenting classes.
 {¶ 45} Angela also failed to visit Jonathon. She was scheduled to have an hour of visitation on September 19, 2001, but failed to attend and did not call to reschedule. Angela argues in her brief that the Department did not attempt to contact her regarding her failure to attend visitation until October 11, 2001, and that this shows that the Department was not working toward reunification. This argument is absurd. Angela failed to attend the visitation and failed to contact the Department. While the Department must use diligent efforts there has to be some effort on the part of the parent. Angela failed to put forth that effort. The Department's efforts were reasonable and diligent.
 {¶ 46} Angela also contends that the Department did not diligently pursue the possibility of placing Jonathan with his paternal aunt, Tracey Paige ("Tracey"). Angela first argues that the Department failed to act diligently to establish that Jonathon King, Sr., was Jonathon's father. While there was a significant delay in establishing paternity the record is clear that both Angela and Jonathon King, Sr., suspected that Jonathon King, Sr., was the father at the time of the birth. Neither Angela nor Jonathon King, Sr., took any steps to establish paternity. Jonathon King, Sr., did not submit to a paternity test until ordered to do so by the court in November 2002.
 {¶ 47} Angela next argues that the Department was aware that Tracey was interested in obtaining custody and failed to pursue this possibility diligently. Tracey did express an interest in obtaining custody and the Department instructed her to obtain a home study. The Department also told Tracey that the Department could do nothing further until paternity was established. Apparently, Tracey received conflicting information regarding the ability to have a home study completed from a Cuyahoga County social services agency. However, she failed to contact the Department regarding this issue and never completed the home study.
 {¶ 48} Angela also argues that the Department discouraged Tracey from seeking custody by telling her that permanent custody was inevitable. We first note that there was conflicting evidence on this issue. Further, while it may have been better had the Department not revealed this opinion; we cannot say that it erred in doing so. Certainly based on the situation at the time the opinion was justified.
 {¶ 49} While in hindsight, perhaps the Department could have done more to place Jonathon with his paternal aunt, we cannot say that the Department's efforts were not diligent, especially in light of the fact that paternity was not established.
 {¶ 50} After a thorough review of the record, it is clear that the trial court's judgment granting permanent custody to the Department was supported by clear and convincing evidence. Appellant's assignment of error is without merit and the judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
Christley and Grendell, JJ., concur.
[1] At the time of the birth Angela was married to Christopher Thomas; Christopher was thus the presumed father. Jonathon King, Sr., was the putative father.
[2] Angela failed to appear for this hearing although she was provided notice.
[3] R.C. 2151.414(E)(7) through (11) state:
{¶ a} "(7) The parent has been convicted of or pleaded guilty to one of the following:
{¶ b} "(a) An offense under section 2903.01, 2903.02, or2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
{¶ c} "(b) An offense under section 2903.11, 2903.12, or2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
{¶ d} "(c) An offense under division (B)(2) of section2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
{¶ e} "(d) An offense under section 2907.02, 2907.03,2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
{¶ f} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
{¶ g} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
{¶ h} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
{¶ i} "(10) The parent has abandoned the child.
{¶ j} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child.
[4] Angela was to have supervised visitation at the Department for one hour a week beginning on September 19, 2001.